SCJ:ABS/RAP
F.# 2016R02193

FILED
CLERK

2017 JUL -5 PM 4: 23

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

– – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

- against -

WAEL BAKRY,
ABRAHAM DEMOZ,
VICTOR GENKIN,
MAYURA KANEKAR and
ALEXANDER KHAVASH,

Defendants.

I N D I C T M E N T

Cr. No.
(T. 18, U.S.C., §§ 371, 982(a)(7),
982(b)(1), 1349 and 3551 et
seq.; T. 21, U.S.C., § 853(p))

CR 17 353

CHEN, J.

POLLAK, M.J.

– – – – – – – – – – – – – – – – X

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    Background

A.    The Medicare and Medicaid Programs

1.    The Medicare program ("Medicare") was a federal health care program

providing benefits to persons who were at least 65 years old or disabled.  Medicare was

administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency

under the United States Department of Health and Human Services.  Individuals who

received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      The New York State Medicaid program ("Medicaid") was a federal and state health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care.  CMS was responsible for overseeing the Medicaid program in participating states, including New York.  Individuals who received benefits under Medicaid were similarly referred to as "beneficiaries."

3.      Medicare and Medicaid were "health care benefit programs," as defined by Title 18, United States Code, Section 24(b).

4.      Medicare was divided into multiple parts.  Medicare Part B covered the costs of physicians' services and outpatient care, such as physical therapy, occupational therapy and diagnostic tests.  Generally, Medicare Part B covered these costs only if, among other requirements, they were medically necessary and ordered by a physician.

5.      Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled.  Among the specific medical services and products provided by Medicaid were physical therapy, occupational therapy and diagnostic tests.  Generally, Medicaid covered these costs only if, among other requirements, the services and products were medically necessary and ordered by a physician.

6.      Medical providers and suppliers that sought to participate in Medicare Part B and Medicaid and to bill Medicare and Medicaid for the cost of their treatment of Medicare and Medicaid beneficiaries and related benefits, items and services were required to apply for and receive a provider identification number ("PIN") or provider transaction access number ("PTAN") from each program.  The PIN/PTAN allowed medical providers

2

and suppliers to submit bills, known as claims, to Medicare and Medicaid, respectively, to obtain reimbursement for the cost of treatment and related health care benefits, items and services that they had supplied and provided to beneficiaries.

7.      Medical providers and suppliers were authorized to submit claims to Medicare and Medicaid only for services they actually rendered and items they actually provided, and were required to maintain patient records verifying the provision of services and items.

8.      To receive reimbursement from Medicare for covered services and items, medical providers were required to submit claims, either electronically or in writing, through Forms CMS-1500 or Forms UB-92. To receive reimbursement from Medicaid for covered services and items, medical providers were required to submit claims, either electronically or in writing, through New York State eMedNY-150003 Claim Forms. Each claim form required certain important information, including: (a) the beneficiary's name and identification number; (b) the PIN/PTAN of the doctor or other qualified health care provider who ordered the health care benefit, item or service that was the subject of the claim; (c) the health care benefit, item or service that was provided or supplied to the beneficiary; (d) the billing codes for the benefit, item or service; and (e) the date upon which the benefit, item or service was provided or supplied to the beneficiary. By submitting the claim, the provider was certifying, among other things, that the items and services were not induced by kickbacks, were rendered to the beneficiary and were medically necessary.

B.    Relevant Individuals and Entities

(1)    The Defendants and Related Entities

9.    The defendants each owned and operated a number of professional service corporations, which, together with other such corporations (collectively, the "Professional Corporations"), were used to advance the scheme as set forth below.

10.    The defendant WAEL BAKRY was a licensed physical therapist authorized to participate in the Medicare and Medicaid programs.  BAKRY incorporated two of the Professional Corporations, as follows:

(a)    Cure Touch Rehab & PT P.C., which purported to do business at 2911 Surf Avenue, Brooklyn, NY 11224, and other locations; and

(b)    Priority Care Rehab & PT P.C., which purported to do business at 2911 Surf Avenue, Brooklyn, NY 11224, and other locations.

11.    The defendant ABRAHAM DEMOZ was a licensed physician authorized to participate in the Medicare and Medicaid programs.  DEMOZ incorporated three of the Professional Corporations, as follows:

(a)    Surf Medical, P.C., which purported to do business at 2911 Surf Avenue, Brooklyn, NY 11224, and other locations;

(b)    Woodhaven Physician PC, which purported to do business at 63-52 Woodhaven Boulevard, Rego Park, NY 11374, and other locations; and

(c)    Sunshine Medical P.C., which purported to do business at 9408 Flatlands Avenue, Brooklyn, NY 11236, and other locations.

4

12.     The defendant VICTOR GENKIN was a licensed occupational therapist authorized to participate in the Medicare and Medicaid programs. GENKIN incorporated two of the Professional Corporations, as follows:

(a)     Victor's Occupational Therapy Solutions, P.C., which purported to do business at 303 Avenue P, Apt. F-9, Brooklyn, NY 11204, and other locations; and

(b)     NYC Occupational Therapy P.C., which purported to do business at 303 Avenue P, Apt. F-9, Brooklyn, NY 11204, and other locations.

13.     The defendant MAYURA KANEKAR was a licensed occupational therapist authorized to participate in the Medicare and Medicaid programs. KANEKAR incorporated two of the Professional Corporations, as follows:

(a)     Excel Occupational Therapy Services P.C., which purported to do business at 61-43 186th Street, Fresh Meadows, NY 11365, and other locations; and

(b)     Able Occupational Therapy Services, P.C., which purported to do business at 61-43 186th Street, Fresh Meadows, NY 11365, and other locations.

14.     The defendant ALEXANDER KHAVASH was a licensed chiropractor authorized to participate in the Medicare and Medicaid programs. KHAVASH incorporated two of the Professional Corporations, as follows:

(a)     Alexander Khavash, DC, P.C., which purported to do business at 223 Piccadilly Downs, Lynbrook, NY 11563, and other locations; and

(b)     AK Chiropractic P.C., which purported to do business at 223 Piccadilly Downs, Lynbrook, NY 11563, and other locations.

(2)     Co-Conspirators and Related Entities

15.     A number of co-conspirators of the defendants, including, among others, Eduard Noykhovich, Oleg Dron and Amgad Mikhail, were medical professionals who established other of the Professional Corporations.

16.     Co-conspirator Eduard Noykhovich was a licensed physical therapist authorized to participate in the Medicare and Medicaid programs.  Noykhovich incorporated Ideal Health PT, P.C. ("Ideal Health") in approximately September 2009, and served as the President of Ideal Health from approximately September 2009 through approximately October 2015.

17.     Ideal Health was one of the Professional Corporations and was located at:  (a) 2263 E. 15th Street, Brooklyn, NY 11229; (b) 2365 E. 13th Street, Brooklyn, NY 11229; and other locations.  Ideal Health purported to provide physical therapy services to Medicare and Medicaid beneficiaries.

18.     Co-conspirator Oleg Dron was a licensed occupational therapist authorized to participate in the Medicare and Medicaid programs.  Dron incorporated Oleg Dron Handz On Occupational Therapy, P.C. ("Handz On") in approximately October 2006, and served as the President of Handz On from approximately October 2006 through approximately January 2014.

19.     Handz On was one of the Professional Corporations and was located at 1729 East 14th Street, #A, Brooklyn, NY 11229, and other locations.  Handz On purported to provide occupational therapy services to Medicare and Medicaid beneficiaries.

20.     Co-conspirator Amgad Mikhail was a licensed physical therapist authorized to participate in the Medicare and Medicaid programs.  Mikhail incorporated St.

6

Pavly P.T. P.C. ("St. Pavly") in approximately April 2008, and served as the President of St. Pavly from approximately April 2008 through approximately March 2016.

21. St. Pavly was one of the Professional Corporations and was located at 1601 W. 5th Street, Brooklyn, NY 11223, and other locations. St. Pavly purported to provide physical therapy services to Medicare and Medicaid beneficiaries.

22. A number of co-conspirators of the defendants, including, among others, Roman Azimov, Malvina Yablonskaya, Yevgeniy Sudman and Moshe Izgelov, owned and operated companies purportedly in the business of providing management, consulting, advertising, marketing, medical support and other commercial services to the Professional Corporations (the "Kickback Shell Companies").

23. Co-conspirator Roman Azimov owned and operated a number of the Kickback Shell Companies and used bank accounts opened in the names of those companies to assist the defendants and their co-conspirators in furthering the criminal scheme set forth below. Those Kickback Shell Companies included, among others, the following:

(a) Surf Consulting Group Inc., which purported to do business at 2911 Surf Avenue, Brooklyn, NY 11224, and other locations;

(b) Neptune Consulting Services, Inc., which purported to do business at 1218 Neptune Avenue, Brooklyn, NY 11224, and other locations;

(c) R.E.M.M. Research & Marketing, Inc., which purported to do business at 46 Hollywood Avenue, Lynbrook, NY 11563, and other locations;

(d) B.Z.R. Inc., which purported to do business at 2276 East 13th Street, Brooklyn, NY 11229, and other locations;

(e)     Tri State Recruiting Services, Inc., which purported to do business at 46 Hollywood Avenue, Lynbrook, NY 11563, and other locations; and

(f)     Prime Collections Solutions Inc., which purported to do business at 46 Hollywood Avenue, Lynbrook, NY 11563, and other locations.

24.     Co-conspirator Malvina Yablonskaya owned and operated several of the Kickback Shell Companies and used bank accounts opened in the names of those companies to assist the defendants and their co-conspirators in furthering the criminal scheme set forth below.  Those Kickback Shell Companies included, among others, the following:

(a)     Healthy Palm Management, Inc., which purported to do business at 2263 East 15th Street, Brooklyn, NY 11229, and other locations; and

(b)     Bay Solutions Plus, Inc., which purported to do business at 2263 East 15th Street, Brooklyn, NY 11229, and other locations.

25.     Co-conspirator Yevgeniy Sudman owned and operated one of the Kickback Shell Companies called Prime Care Medical Management, Inc. ("PCMM"), which purported to do business at 2955 Brighton 4th Street, Brooklyn, NY 11235, and other locations.  Sudman used bank accounts opened in the name of PCMM to assist the defendants and their co-conspirators in furthering the criminal scheme set forth below.

26.     Co-conspirator Moshe Izgelov owned and operated several of the Kickback Shell Companies and used bank accounts opened in the names of those companies to assist the defendants and their co-conspirators in furthering the criminal scheme set forth below.  Those shell companies included, among others, the following:

8

(a)     FH Support Group, Inc., which purported to do business at

108-27 63rd Avenue, Forest Hills, NY 11375, and other locations; and

(b)     Right Management, Inc., which purported to do business at

108-27 63rd Avenue, Forest Hills, NY 11375, and other locations.

II.     The Fraud and Kickback Scheme

27.     Between approximately June 2009 and June 2016, the defendants

WAEL BAKRY, ABRAHAM DEMOZ, VICTOR GENKIN, MAYURA KANEKAR and

ALEXANDER KHAVASH, together with others, agreed to execute and executed a scheme

to enrich themselves whereby they: (a) artificially and corruptly increased demand for

medical services by providing Medicare and Medicaid beneficiaries with cash payments to

induce those beneficiaries to subject themselves to medically unnecessary procedures,

services and tests; (b) submitted and caused to be submitted claims to Medicare and

Medicaid for medically unnecessary services to beneficiaries, such as physical therapy,

occupational therapy and other services; (c) submitted and caused to be submitted claims to

Medicare and Medicaid for physical therapy, occupational therapy and other medical

services that were not rendered, not supervised by licensed professionals as required, and not

performed by professionals trained and authorized to perform those medical services;

(d) submitted and caused to be submitted claims to Medicare and Medicaid that were

fraudulently induced by cash kickbacks paid to beneficiaries; and (e) engaged in deceptive

acts and contrivances intended to hide information, mislead, avoid suspicion and avert

further inquiry into the scheme.

28.     Specifically, the defendants WAEL BAKRY, ABRAHAM DEMOZ,

VICTOR GENKIN, MAYURA KANEKAR and ALEXANDER KHAVASH, together with

others, submitted and caused to be submitted to Medicare and Medicaid false and fraudulent claims for physical therapy, occupational therapy and other medical services that were not medically necessary, not rendered, not supervised by licensed professionals as required, not performed by professionals trained and authorized to perform those medical services, and that the defendants knew were induced by cash kickback payments to beneficiaries.

29.     In order to receive payment for claims submitted to Medicare and Medicaid through the Professional Corporations they each controlled, the defendants WAEL BAKRY, ABRAHAM DEMOZ, VICTOR GENKIN, MAYURA KANEKAR and ALEXANDER KHAVASH, together with others, submitted and caused the submission of paperwork that permitted them to receive electronic deposits from Medicare and Medicaid into various bank accounts under their control.

30.     Upon receiving payments from Medicare and Medicaid, the defendants WAEL BAKRY, ABRAHAM DEMOZ, VICTOR GENKIN, MAYURA KANEKAR and ALEXANDER KHAVASH transferred substantial sums of this money to their co-conspirators by means of checks made payable to the Kickback Shell Companies, which were purportedly in the business of providing management, consulting, advertising, marketing, medical support and other commercial services.  In reality, these companies provided only superficial professional support and other services.  Instead, the Kickback Shell Companies were used primarily to conceal the illegal nature of the defendants' payments to their co-conspirators and to generate cash that could be used to pay illegal kickbacks to patients, who were referred to the defendants for physical therapy, occupational therapy and other services that would later be paid for in whole and in part by Medicare and Medicaid.  The defendants' co-conspirators converted many of the checks written to the

Kickback Shell Companies, purportedly for legitimate business expenses, into cash through a series of transactions that included, among other steps, cashing checks for a fee at check-cashing businesses.

31.     In order to conceal the illicit nature of his relationship with the Kickback Shell Companies, the defendants WAEL BAKRY, ABRAHAM DEMOZ, VICTOR GENKIN, MAYURA KANEKAR and ALEXANDER KHAVASH, together with others, caused the Kickback Shell Companies to prepare and submit invoices falsely indicating that the payments made by the defendants to the Kickback Shell Companies were fees for management and other legitimate business services, when, in fact, as the defendants well knew, the payments were illegal kickbacks paid primarily in return for patient referrals.

32.     Between approximately January 2011 and August 2014, the defendant WAEL BAKRY submitted and caused to be submitted approximately $27 million in claims to Medicare and was paid approximately $11 million on those claims.

33.     Between approximately January 2010 and March 2015, the defendant ABRAHAM DEMOZ submitted and caused to be submitted approximately $14 million in claims to Medicare and was paid approximately $ 9 million on those claims.

34.     Between approximately January 2010 and August 2014, the defendant VICTOR GENKIN submitted and caused to be submitted approximately $18 million in claims to Medicare and was paid approximately $8 million on those claims.

35.     Between approximately January 2011 and June 2016, the defendant MAYURA KANEKAR submitted and caused to be submitted approximately $30 million in claims to Medicare and was paid approximately $12 million on those claims.

36.     Between approximately January 2010 and August 2014, the defendant ALEXANDER KHAVASH submitted and caused to be submitted approximately $8 million in claims to Medicare and was paid approximately $3 million on those claims.

37.     The defendants also submitted and caused to be submitted claims to Medicaid and were paid on those claims.

III.    The Tax Fraud Conspiracy

38.     The Internal Revenue Service ("IRS"), an agency within the U.S. Department of the Treasury, was responsible for administering and enforcing federal revenue laws and regulations regarding the ascertainment, computation, assessment and collection of taxes owed to the United States by its citizens and residents.

39.     In order to accurately assess and collect taxes, the IRS, among other things, determined taxpayers' actual income, credits and deductions. In doing so, the IRS used, among other means, tax returns filed pursuant to the tax laws and regulations of the United States. In general, domestic corporations in existence for any part of a tax year filed an income tax return for that year to report taxable income.

40.     For each of the Professional Corporations controlled by the defendants WAEL BAKRY, ABRAHAM DEMOZ, VICTOR GENKIN, MAYURA KANEKAR and ALEXANDER KHAVASH, the defendants were required to file with the IRS a United States Corporation Income Tax Return, Form 1120 ("Form 1120"), or an Income Tax Return for an S Corporation, Form 1120S ("Form 1120S"), to report those companies' gross receipts, income, gains, losses, deductions, credits and income tax liabilities.

41.     Between approximately June 2009 and June 2016, the defendants WAEL BAKRY, ABRAHAM DEMOZ, VICTOR GENKIN, MAYURA KANEKAR,

ALEXANDER KHAVASH and others conspired to file and cause to be filed false tax returns with the IRS for the Professional Corporations.

42.     Specifically, for various of the tax years 2009 through 2015, the defendants WAEL BAKRY, ABRAHAM DEMOZ, VICTOR GENKIN, MAYURA KANEKAR and ALEXANDER KHAVASH falsely reported to the IRS that the payments they made to the Kickback Shell Companies were real and legitimate business expenditures when, as the defendants well knew, these payments were, in fact, illegal kickbacks the primary purpose of which was to secure patient referrals. By representing the payments to the Kickback Shell Companies as legitimate business expenses, the defendants caused the Forms 1120 and Forms 1120S filed with the IRS for the various Professional Corporations they controlled to falsely under-report business income and falsely claim deductions.

## COUNT ONE
(Conspiracy to Commit Health Care Fraud and Wire Fraud)

43.     The allegations contained in paragraphs one through 42 are realleged and incorporated as if fully set forth in this paragraph.

44.     In or about and between June 2009 and June 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants WAEL BAKRY, ABRAHAM DEMOZ, VICTOR GENKIN, MAYURA KANEKAR, and ALEXANDER KHAVASH, together with others, did knowingly and intentionally conspire:

(a)     to execute a scheme and artifice to defraud one or more health care benefit programs, as defined in Title 18, United States Code, Section 24(b), to wit: Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses,

13

representations and promises, money and property owned by, and under the custody and

control of, Medicare and Medicaid, in connection with the delivery of and payment for health

care benefits, items and services, contrary to Title 18, United States Code, Section 1347; and

        (b)     to devise a scheme and artifice to defraud Medicare and

Medicaid, and to obtain money and property from them by means of materially false and

fraudulent pretenses, representations and promises, and for the purpose of executing such

scheme and artifice, to transmit and cause to be transmitted by means of wire

communications in interstate commerce writings, signs, signals, pictures and sounds,

contrary to Title 18, United States Code, Section 1343.

        (Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
### (Conspiracy to Defraud by Obstructing the Lawful Functions of the Internal Revenue Service)

45.    The allegations contained in paragraphs one through 42 are realleged

and incorporated as if fully set forth in this paragraph.

46.    In or about and between June 2009 and June 2016, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants WAEL BAKRY, ABRAHAM DEMOZ, VICTOR GENKIN, MAYURA

KANEKAR, and ALEXANDER KHAVASH, together with others, did knowingly and

willfully conspire to defraud the United States by impairing, impeding, obstructing and

defeating the lawful government functions of the IRS, an agency and department of the

United States, in the ascertainment, computation, assessment and collection of revenue, to

wit: income taxes.

## MANNER AND MEANS

47.     The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

(a)     directing that Medicare and Medicaid make deposits consisting of reimbursement payments for fraudulent claims directly into various bank accounts in the names of the Professional Corporations controlled by the defendants;

(b)     writing checks drawn on those accounts made payable to the Kickback Shell Companies for the primary purpose of securing patient referrals;

(c)     falsely deducting those payments as legitimate business expenses on Forms 1120 and Forms 1120S for the Professional Corporations; and

(d)     under-reporting income on Forms 1120 and Forms 1120S filed on behalf of the Professional Corporations and any associated personal returns the defendants filed.

48.     In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants WAEL BAKRY, ABRAHAM DEMOZ, VICTOR GENKIN, MAYURA KANEKAR and ALEXANDER KHAVASH, together with others, committed and caused to be committed, among others, the following:

## OVERT ACTS

(a)     On or about April 29, 2012, BAKRY filed and caused to be filed a Form 1120 on behalf of Cure Touch Rehab & PT P.C. for the tax year 2011;

(b)     On or about April 16, 2012, DEMOZ filed and caused to be filed a Form 1120S on behalf of Surf Medical, P.C. for the tax year 2011;

15

      (c)     On or about September 12, 2012, GENKIN filed and caused to be filed a Form 1120S on behalf of Victor's Occupational Therapy Solutions, P.C. for the tax year 2011;

      (d)     On or about September 11, 2012, KANEKAR filed and caused to be filed a Form 1120 on behalf of Excel Occupational Therapy Services P.C. for the tax year 2011; and

      (e)     On or about March 15, 2012, ALEXANDER KHAVASH filed and caused to be filed a Form 1120S on behalf of Alexander Khavash, DC, P.C. for the tax year 2011.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT ONE

49.     The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offense.

50.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      (a)     cannot be located upon the exercise of due diligence;

      (b)     has been transferred or sold to, or deposited with, a third party;

      (c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendants up to the value of the forfeitable property described in this

forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21,

United States Code, Section 853(p))


A TRUE BILL

_____
FOREPERSON


_____
BRIDGET M. ROHDE
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK


_____
SANDRA MOSER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

F. #2016R02913

FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

### EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*WAEL BAKRY, ET AL.,*

Defendants.

## INDICTMENT

(T. 18, U.S.C., §§ 371, 982(a)(7), 982(b)(1), 1349 and 3551 et seq.; T. 21, U.S.C., § 853(p))

*A true bill.*

\_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_

*Foreperson*

*Filed in open court this* \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ *day,*

*of* \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ *A.D. 20* \_ \_ \_ \_ \_

\_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_

*Clerk*

*Bail, $* \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_

\_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_

*Richard Powers, Trial Attorney, (718)-254-6313*